In the

# United States Court of Appeals
## For the Seventh Circuit

───────────────

No. 16-4240

LUIS SEGOVIA, et al.,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA, et al.,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-10196 — **Joan B. Gottschall**, *Judge*.

───────────────

ARGUED SEPTEMBER 15, 2017 — DECIDED JANUARY 18, 2018

───────────────

Before MANION, ROVNER, and HAMILTON, *Circuit Judges*.

MANION, *Circuit Judge*. In this appeal, former residents of
Illinois now residing in the United States territories of Puerto
Rico, Guam, and the Virgin Islands challenge federal and state
statutes that do not allow them to obtain absentee ballots for
federal elections in Illinois. Generally, federal and state law
require that former residents living outside of the United
States who retain their U.S. citizenship receive such ballots.
But the territories where the plaintiffs now reside are consid-
ered part of the United States under the relevant statutes,

while other territories are not. The anomalous result is that former Illinois residents who move to some territories can still vote in federal elections in Illinois, but the plaintiffs cannot. The plaintiffs challenge that result as violative of their equal protection rights and their right to travel protected by the Due Process Clause.

The district court rejected their claims, holding that there was a rational basis for the inclusion of some territories but not others in the definition of the United States. With respect to the challenge to the Illinois statute, we agree with the district court. However, we conclude that plaintiffs lack standing to challenge the federal Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) in this context. The UOCAVA does not prevent Illinois from providing the plaintiffs absentee ballots, and so it does not cause their injury. To the extent the plaintiffs are injured, it is because they are not entitled to ballots under state law. Therefore, we affirm the portion of the judgment in favor of the state defendants, but vacate the portion of the judgment in favor of the federal defendants and remand the case with instructions to dismiss that portion for want of jurisdiction.

## I. Background

Congress enacted the UOCAVA to protect the voting rights of United States citizens who move overseas but retain their American citizenship. To do that, the law requires the States to permit "overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 52 U.S.C. § 20302(a)(1). An "overseas voter" for these purposes is "a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in

which the person was domiciled before leaving the United States." *Id.* § 20310(5)(c). In short, federal law requires each State to provide absentee ballots to its former otherwise qualified residents who now reside outside of the United States.

Illinois complies with this requirement. Its law provides that "[a]ny non-resident civilian citizen, otherwise qualified to vote, may make application to the election authority having jurisdiction over his precinct of former residence for a vote by mail ballot containing the Federal offices only not less than 10 days before a Federal election." 10 ILCS 5/20-2.2. Non-resident civilian citizens are United States citizens who reside "outside the territorial limits of the United States," but previously maintained a residence in Illinois and are not registered to vote in any other State. *Id.* 5/20-1(4). As required under the UOCAVA, these voters need not declare any intent to return to Illinois in order to be eligible to vote. *Id.*

So what's the catch? Our plaintiffs are residents of Guam, Puerto Rico, and the Virgin Islands. All three territories are considered part of the United States under both the UOCAVA and Illinois law. Federal law says the United States "means the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and American Samoa[,]" 52 U.S.C. § 20310(8), while Illinois law says that it includes "the District of Columbia, the Commonwealth of Puerto Rico, Guam and the Virgin Islands; but does not include American Samoa, the Canal Zone, the Trust Territory of the Pacific Islands or any other territory or possession of the United States." 10 ILCS 5/20-1(1). The upshot is that the plaintiffs are not entitled to vote in federal elections in Illinois because they still reside within the United States. Had they moved instead to American Samoa or the Northern Mariana

Islands, Illinois law would consider them to be overseas residents entitled to ballots. This distinction between the various U.S. territories gave rise to this litigation.

The plaintiffs sued federal and Illinois officials in the Northern District of Illinois seeking declaratory and injunctive relief. They argued that the UOCAVA and Illinois law violate the Due Process and Equal Protection Clauses by permitting residents of some territories to vote in federal elections but not others. The plaintiffs also contended that the statutes infringe upon their right to travel guaranteed by the Due Process Clause. The parties filed cross-motions for summary judgment, and the district court granted the defendants' motions in two separate opinions. *Segovia v. Bd. of Election Commrs.*, 201 F. Supp. 3d 924 (N.D. Ill. 2016) (*Segovia I*); *Segovia v. Bd. of Election Commrs.*, 218 F. Supp. 3d 643 (N.D. Ill. 2016) (*Segovia II*). The plaintiffs timely appealed.

## II. Analysis

### A. Standing to Challenge the UOCAVA

Nobody doubts that the plaintiffs, who are unable to apply for absentee ballots, have suffered an injury-in-fact sufficient to confer Article III standing in this case. But, in order for us to properly exercise jurisdiction, their injury must be "fairly traceable to the challenged conduct." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). The federal defendants say that the plaintiffs' injury is not traceable to the government's enforcement of the UOCAVA, but rather to the plaintiffs' ineligibility for ballots under Illinois law. As they explain, federal law sets the floor, but Illinois is permitted to offer ballots to residents of the territories even if not required to do so by the

UOCAVA. The district court rejected this argument, concluding that "Illinois is bound by the floor that the federal defendants stress that the UOCAVA provides." *Segovia I*, 201 F. Supp. 3d at 937. Thus, it concluded that the plaintiffs' injury is in part traceable to the UOCAVA.

We disagree. Federal law *requires* Illinois to provide absentee ballots for its former residents living in the Northern Mariana Islands, but it does not *prohibit* Illinois from providing such ballots to former residents in Guam, Puerto Rico, and the Virgin Islands. State law could provide the plaintiffs the ballots they seek; it simply doesn't. Instead, it adds (by way of subtraction from the definition of the United States) only American Samoa to the roster of territories that may take advantage of the overseas voting procedures. In short, the reason the plaintiffs cannot vote in federal elections in Illinois is not the UOCAVA, but Illinois' own election law.

To be sure, federal law *could have* required Illinois to provide the plaintiffs absentee ballots. But that does not render federal law the cause of the plaintiffs' injuries. Consider *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976). In that case, the Supreme Court held that indigent patients lacked standing to challenge an IRS rule that gave favorable tax treatment to hospitals which declined to provide non-emergency services to such patients. The Court explained that Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Id.* at 41–42. So while the IRS rule may have incentivized hospitals to deny the plaintiffs care, it was the hospitals—not the IRS—that made the decision not to treat the patients.

Our decision in *DH2, Inc. v. S.E.C.*, 422 F.3d 591 (7th Cir. 2005), is similar. DH2 was an arbitrager that made money buying undervalued mutual funds whose prices had yet to be adjusted from the effects of overseas trading. It challenged SEC statements that it said required mutual funds to use "fair value pricing," eliminating the discrepancy that permitted companies like DH2 to profit with minimal risk. In reality, the challenged rules didn't require the use of fair value pricing if "market quotations for their portfolio securities [were] not readily available." *Id.* at 595 (quoting 69 Fed. Reg. 22304–05 (Apr. 23, 2004)). For that reason, we concluded that DH2 had not established that any injury it might have suffered would be fairly traceable to the SEC rules. *Id.* at 597. We observed that under the challenged rules, "mutual funds have the discretion to use fair value pricing in lieu of market quotations when circumstances warrant the conclusion that market quotations are no longer current." *Id.* Thus, "to a significant degree, the injury DH2 complains of hinges on the decisions of independent actors whose discretion—though subject to securities laws and regulation by the SEC—is nonetheless quite broad." *Id.* Given the discretion the funds retained, DH2 could not sue the SEC.

Like the funds in *DH2* and the hospitals in *Simon*, Illinois has discretion to determine eligibility for overseas absentee ballots under its election laws. That discretion is actually wider than the independent actors had in those cases, because there is *nothing* other than Illinois law preventing the plaintiffs from receiving ballots. Federal law doesn't encourage Illinois not to offer the plaintiffs ballots. And the federal government doesn't run the elections in Illinois, so, UOCAVA or not, whether the plaintiffs can obtain absentee ballots is entirely up to Illinois. Given that type of unfettered discretion

with respect to the plaintiffs, the federal government cannot be the cause of their injuries. Illinois has caused their injuries by failing to provide them ballots. Simply put, the plaintiffs cannot sue the federal government for failing to enact a law requiring Illinois to remedy their injury. Therefore, we hold that the plaintiffs lack standing to challenge the UOCAVA.[1]

---

[1] Additionally, at least for the equal-protection claim, there may be an additional standing problem. The plaintiffs "must establish the district court's jurisdiction over each of their claims independently." *Rifkin v. Bear Stearns & Co., Inc.*, 248 F.3d 628, 634 (7th Cir. 2001). And we have serious doubts that the plaintiffs' injury with respect to the equal-protection claim is "likely to be redressed by a favorable judicial decision" against the federal defendants. *Hollingsworth*, 133 S. Ct. at 2661. For even if we were to hold that the UOCAVA's distinction among the territories violated the equal-protection component of the Due Process Clause, what would be the proper remedy? The Supreme Court has told us that "we must adopt the remedial course Congress likely would have chosen 'had it been appraised of the constitutional infirmity.'" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1701 (2017) (quoting *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 427 (2010)). Although the remedy in the run of cases would be to extend the favorable treatment (here, voting rights) to all, that would not hold when extension "would render the special treatment Congress prescribed … the general rule, no longer an exception." *Id.*

The caveat would seem to apply here, as the UOCAVA makes the Northern Mariana Islands the only United States territory treated as a foreign nation for the purposes of overseas voting. The other territories are considered part of the United States and therefore not subject to the UOCAVA's requirement that they be permitted to vote in federal elections in their last state of residence. Under *Morales-Santana*, we should presume that Congress would have wanted the general rule—that U.S. territories are part of the United States—to control over the exception for the Northern Marianas. Therefore, instead of extending voting rights to all the territories, the proper remedy would be to extend them to none of the territories. That means a holding that the UOCAVA violates equal protection would not remedy the plaintiffs' injuries.

**B. Constitutionality of the Illinois Law**

Having decided that the plaintiffs lack standing to challenge the UOCAVA in the context of this case, we are left with their challenge to Illinois' overseas-voting law. The plaintiffs say the law violates the Equal Protection Clause as well as their right to interstate travel guaranteed by the Due Process Clause. We consider these arguments in turn.

**1. Equal Protection**

The plaintiffs first argue that the Illinois law should be subject to strict scrutiny. "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976) (per curiam) (footnote omitted). To be sure, the right to vote "is a fundamental matter in a free and democratic society." *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). But the residents of the territories have no fundamental right to vote in federal elections. The territories send no electors to vote for president or vice president and have no voting members in the United States Congress. See *Igartua v. United States*, 626 F.3d 592, 597–98 (1st Cir. 2010). Even residents of the District of Columbia had no federal voting rights at all until the Twenty-Third Amendment was ratified in 1961, allowing the District to designate three electors to vote with the Electoral College. Washington, D.C., still has no voting representation in the House of Representatives or the Senate. The unmistakable conclusion is that, absent a constitutional amendment, only residents of the 50 States have the right to vote in federal elections. The plaintiffs have no special right simply because they *used to* live in a State.

Nor do the plaintiffs constitute a suspect class. "A suspect class either 'possesses an immutable characteristic determined solely by the accident of birth,' or is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007) (quoting *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973), and *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973)). The plaintiffs' current condition is not immutable, as nothing is preventing them from moving back to Illinois. And there has been no suggestion that the plaintiffs form a class of people historically subjected to unequal treatment. Indeed, we doubt that "people who move from a State to a territory" even constitute a class of people recognized by the law. Thus, we decline the plaintiffs' invitation to apply strict scrutiny to the Illinois law.

Because the Illinois law does not affect a fundamental right or a suspect class, it need only satisfy rational-basis review. *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080 (2012). That is, we will invalidate it only if there is no rational relationship between the law and some legitimate government purpose. *Id.* And while the distinction among United States territories may seem strange to an observer today, it made more sense when Illinois enacted the challenged definition. As the district court explained, in 1979 the Northern Mariana Islands were a Trust Territory, rather than a fully incorporated U.S. territory. See *Segovia I*, 201 F. Supp. 3d at 945–46. The covenant to establish a commonwealth in the Northern Marianas did not take effect until 1986. Meanwhile, American Samoa is still defined as an "outlying possession" under federal law,

and persons born there are American nationals, but not citizens. 8 U.S.C. §§ 1101(a)(29), 1408(1); *United States v. Karaouni*, 379 F.3d 1139, 1142–43 (9th Cir. 2004) ("All citizens of the United States are nationals, but some nationals, such as persons born in American Samoa and other U.S. territorial possessions, are not citizens."). One could rationally conclude that these two territories were in 1979 more similar to foreign nations than were the incorporated territories where the plaintiffs reside. So, at least at the time, it was rational for Illinois to treat the Northern Marianas and American Samoa as foreign countries for the purposes of overseas absentee voting.

In the special context of this case, our conclusion that the Illinois definition was rational in 1979 controls the outcome. That is because even if the plaintiffs were correct and the definition at some point became irrational as the Northern Marianas and American Samoa became more integrated into the United States, it would not help the plaintiffs. They are injured specifically because Illinois defines their resident territories as *within* the United States. It would be perverse for us to tell Illinois that (1) its distinction made sense in 1979; (2) the current definition is arbitrary because the territories are more integrated into the United States; and so (3) the remedy is to *contract* voting rights for residents in the excluded territories (which it couldn't do anyway because the Northern Marianas are treated as overseas under the UOCAVA). Rather than remove voting rights from its former residents in American Samoa, we think it rational for Illinois to retain the same definition it enacted nearly 40 years ago.

Finally, on a somewhat related note, we think it is significant that were we to require Illinois to grant overseas voting

rights to all its former citizens living in the territories, it would facilitate a larger class of "super citizens" of the territories. As the Second Circuit observed, further extending voting rights under the UOCAVA "would have created a distinction of questionable fairness among Puerto Rican U.S. citizens, some of whom would be able to vote for President and others not, depending whether they had previously resided in a State." *Romeu v. Cohen*, 265 F.3d 118, 125 (2d Cir. 2001). The natural result, as we explained in the previous paragraph and in the first footnote, would be to treat all the territories as part of the United States, so that residing in a territory would give one the rights to participate in territorial elections, but not federal elections in one's former State of residence. Until that happens, however, we see no reason to require Illinois to extend voting rights to its former residents living in Guam, Puerto Rico, and the Virgin Islands.

We affirm the district court's judgment in favor of the state defendants on the equal-protection claim.

### 2. Right to Travel

The plaintiffs also argue that the Illinois statute violates their due process right to interstate travel. This claim is borderline frivolous. The Second Circuit correctly explained that "[a] citizen's decision to move away from her State of residence will inevitably involve certain losses. She will lose the right to participate in that State's local elections, as well as its federal elections, the right to receive that State's police protection at her place of residence, the right to benefit from the State's welfare programs, and the right to the full benefits of the State's public education system. Such consequences of the citizen's choice do not constitute an unconstitutional interference with the right to travel." *Id.* at 126–27. We agree. By

choosing to move to a territory, the plaintiffs gave up the right to vote in Illinois and gained the right to vote in territorial elections. The right to travel doesn't guarantee the plaintiffs anything more than the privileges afforded other territorial residents. See *Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 261 (1974) ("The right of interstate travel must be seen as insuring new residents the same right to vital governmental benefits and privileges in the States to which they migrate as are enjoyed by other residents."). Therefore, the district court properly granted summary judgment to the state defendants.

### III. Conclusion

This is a strange case. The plaintiffs seek the right to continue to vote in federal elections in Illinois even though they are now residents of United States territories. In effect, the plaintiffs are upset that the territories to which they moved are considered under federal and state law to be *part of the United States* rather than overseas. They would like overseas voting rights while still living within the United States. No court has ever held that they are so entitled, and we will not be the first.

We hold that the plaintiffs lack standing to challenge the federal UOCAVA because their injury derives not from the federal statute, but from the failure of Illinois law to guarantee them absentee ballots. So we VACATE the portion of the district court's judgment in favor of the federal defendants and REMAND the case with instructions to dismiss the claims against the federal defendants for want of jurisdiction. With respect to the state defendants, however, we AFFIRM the portion of the judgment below that the Illinois law does not violate the Equal Protection Clause or the due-process right to interstate travel.