In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3207

BRIAN VALENTI,

*Plaintiff-Appellant*,

*v.*

CONNIE LAWSON, Indiana Secretary of State, in her official capacity, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. 1:15-cv-01304-WTL-MPB — **William T. Lawrence**, *Judge*.

ARGUED MARCH 30, 2018 — DECIDED MAY 7, 2018

Before EASTERBROOK and ROVNER, *Circuit Judges*, and GILBERT, *District Judge*.[*]

GILBERT, *District Judge*. Plaintiff Brian Valenti is a convicted felon and registered sex offender. Even though his felony conviction is predicated on a sexual act with a child victim, Valenti believes that the state of Indiana is violating his right

---

[*] Of the Southern District of Illinois, sitting by designation.

to vote by refusing to let him enter a polling site located at a school. The district court granted summary judgment in favor of the state defendants. We affirm.

**I**

In 1993, Brian Valenti was convicted in California state court of a "Lewd or Lascivious Act with [a] Child Under 14 Years"—a felony in violation of Cal. Penal Code § 288. He served ten years in prison for the conviction. Valenti later moved to Indiana, where he registered as a sex offender. The state considers Valenti to be a "serious sex offender" because his offense involved a child victim. Ind. Code § 35-42-4-14(a)(2). Unsurprisingly, Indiana makes it a felony for these "serious sex offenders" to knowingly or intentionally enter school property. Ind. Code § 35-42-4-14(b).

The issue here is that on election days, Valenti's neighborhood polling place is on school property: the Blackford County High School gymnasium, which is about three miles from Valenti's home. Indiana allows felons like Valenti to vote once they are no longer imprisoned. Ind. Code § 3-7-13-5. But if Valenti intentionally enters the high school grounds to vote, he commits a felony in violation of § 35-42-4-14(b). The state—presumably anticipating this dilemma—provides serious sex offenders with the ability to vote by absentee ballot instead. Ind. Code § 3-11-10-24(a)(12). Indiana also permits Valenti to vote (1) at the county courthouse 500 yards from his home at least one day before the election, and (2) on election days at a civic center about 12 miles away from his home.

But that is not enough for Valenti: he argues that Indiana is violating his constitutional right to vote under the First

and Fourteenth Amendments by banning him from the polling site at Blackford County High School. So he brought this as-applied challenge for declaratory and injunctive relief against the Indiana Secretary of State, the individual members of the Indiana Election Commission, the Superintendent of the Indiana State Police, and the Blackford County Prosecutor, all in their official capacities.

In short, Valenti believes that the three alternative methods of voting that Indiana provides are vastly inferior to voting at the local high school. First, he considers voting to be a celebration of his American rights, and he wants to engage in that celebration with his closest neighbors at his neighborhood polling place. Next, most of the local candidates go to the high school—not the civic center 12 miles away—and Valenti wants the chance to engage with them before voting. Third, he believes that the absentee ballot process is riddled with flaws that may lead to his vote not counting. And finally, he asserts that if he must vote early by absentee ballot or at the county courthouse, he will miss out on the "late-breaking news" that is so pervasive in today's 24-hour news cycle.

The parties filed cross-motions for summary judgment below. The district court entered judgment in favor of the state defendants, holding that under the flexible balancing test mandated in *Burdick v. Takushi*, 504 U.S. 428, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992) and its progeny, the state's interest in preventing serious sex offenders from entering school property outweighed the minimal burden on Valenti's rights—especially considering the ample alternative methods of voting available to Valenti. Valenti now appeals.

**II**

We review *de novo* a district court's decision to grant or deny summary judgment to a party. *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016). When reviewing cross-motions for summary judgment, "all reasonable inferences are drawn in favor of the party against whom the motion at issue was made." *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018).

**III**

The district court was correct to enter judgment in favor of the defendants in this case, but it did so for the wrong reasons. Contrary to the assertions of both parties, this case does not implicate Valenti's constitutional right to vote under the First and Fourteenth Amendments. This is because Valenti does not even have a constitutional right to vote: it is well established that Section 2 of the Fourteenth Amendment gives states the "affirmative sanction" to exclude felons from the franchise. *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974); *see also Parker v. Lyons*, 757 F.3d 701, 707 (7th Cir. 2014) ("[t]he Supreme Court has held that states may deprive convicted felons of the right to vote…."). And Indiana chooses to disenfranchise convicted felons who are imprisoned following conviction. Ind. Code § 3-7-13-4(a); Ind. Const. art. II, § 8. Indiana permits felons to vote once they are no longer imprisoned, Ind. Code § 3-7-13-5, but this statutory right is not without restrictions: for example, serious sex offenders cannot enter school grounds to vote and must

use an alternative method instead, such as an absentee ballot. Ind. Code § 35-42-4-14(b); Ind. Code § 3-11-10-24(a)(12).

Accordingly, Valenti only has a statutory right to vote here, not a constitutional right. And since the Indiana statute does not infringe on any fundamental right or suspect class, it only requires rational basis review—not something higher, like the constitutional balancing test seen in *Burdick*, *supra*. *Segovia v. United States*, 880 F.3d 384, 390 (7th Cir. 2018) (citing *Armour v. City of Indianapolis*, 566 U.S. 673, 132 S.Ct. 2073, 2080, 182 L.Ed.2d 998 (2012)); s*ee also Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009) ("In the absence of deprivation of a fundamental right or the existence of a suspect class, the proper standard of review is rational basis.") (internal citation omitted).

The Indiana statute survives rational basis review if there is a "rational relationship between the law and some legitimate governmental purpose." *Segovia*, 880 F.3d at 390; *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). This standard is very deferential to the state: we must uphold the statute "even if it is unwise, improvident, or out of harmony with a particular school of thought." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) (citing *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488, 75 S.Ct. 461, 99 L.Ed. 563 (1955)) (internal quotation marks omitted). To win, Valenti must negate "every conceivable basis which might support [the statute]." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). This is a "notoriously heavy legal lift" for a plaintiff. *Monarch Beverage Co. v. Cook*, 861 F.3d 678, 681 (7th Cir. 2017) (quoting *Indiana Petroleum Marketers &*

*Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015)).

Valenti cannot meet this high burden. First of all, Indiana has offered a legitimate purpose for the statute: to keep serious sex offenders away from schools, where they could prey on children. Sex offenders are a "serious threat" with a "frighteningly high" risk of recidivism, so Indiana's stated purpose is quite legitimate—especially considering that "the victims of sexual assault are most often juveniles." *McKune v. Lile*, 536 U.S. 24, 32, 122 S. Ct. 2017, 2024, 153 L. Ed. 2d 47 (2002). Moreover, there is a rational relationship between Indiana's stated purpose and Ind. Code § 35-42-4-14(b): the statute does not ban all sex offenders from the school grounds, but instead bans "serious" sex offenders—sexually violent predators or those who have committed sex crimes against children.

Indiana's position is an iron-clad fortress in light of the rational basis test. Valenti tries to lay siege to the fortress, but his cannons are full of feathers. His first barrage is targeted at Indiana's stated purpose and grounded in the Supreme Court's recent holding in *Packingham v. North Carolina*, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (U.S. 2017). *Packingham* involved a First Amendment challenge to a North Carolina statute that prohibited all sex offenders from accessing social media websites. The Supreme Court found the statute overbroad, considering it would sweep in and suppress lawful speech in its mission to hunt and destroy unlawful speech. *Packingham*, 137 S. Ct. at 1738 (citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255, 122 S. Ct. 1389, 1404, 152 L. Ed. 2d 403 (2002)). That is quite different from Valenti's case: the Indiana statute narrowly bans serious sex offenders from en-

tering school property, a place where they could come into direct physical contact with children. Valenti also fires at the state's purpose by citing to a Sixth Circuit case that questions whether sex offenders really are more likely to recidivate than other types of criminals, *Does #1-5 v. Snyder*, 834 F.3d 696, 704 (6th Cir. 2016), *reh'g denied* (Sept. 15, 2016), *cert. denied sub nom. Snyder v. John Does #£1-5*, 138 S. Ct. 55, 199 L. Ed. 2d 18 (2017), but it is not our place to engage in a thorough statistical analysis on rational basis review. We must uphold the statute "even if it is unwise, improvident, or out of harmony with a particular school of thought." *Goodpaster*, 736 F.3d at 1071. And even if it was our place, the record in this case is devoid of any statistical evidence.

Valenti also complains about the many alternative methods of voting that Indiana provides to him, even though the state is under no obligation to give him any alternatives at all given his status as a felon. *Richardson*, 418 U.S. at 54, 94 S.Ct. 2655. If Valenti votes by mail, he laments that it is easy to make mistakes on the absentee ballot and that he will not be able to consider late-breaking political news when voting. *See Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004) (explaining some of the difficulties with casting an absentee ballot). If Valenti instead votes at the county courthouse at least 24 hours before election day—where officials could help him fill out his ballot error-free—he still protests that he will miss out on election-day news. And if Valenti votes on election days at the civic center 12 miles away—where he could refresh his Twitter feed and wait until the minute before the polls close before casting his vote—he gripes that the state is banishing him from his neighborhood polling place, meaning that he cannot meet with more local candidates and learn the politics of his neighbors. Valenti believes that the state is

therefore depriving him of the associational and expressional opportunities that come along with voting.

Valenti's arguments are not even remotely persuasive given the ample alternatives that Indiana provides to him, especially considering the state is not required to offer any alternatives at all. Valenti's argument about wanting to learn the politics of his neighbors and the local candidates at the polling place is especially odd, given the fact that Ind. Code § 3–14–3–16(b) makes it a crime for any person to knowingly electioneer within the polls and within 50 feet of the entrance to the polls.

Valenti also relies on three cases outside of this circuit in support of his position, but these cases are inapposite because they dealt with challenges to the fundamental right to vote—not to any statutory right, as here. One case held that voting by absentee ballot was not an acceptable substitute for voting in-person for many African Americans impacted by Texas's voter identification laws, because "[f]or some African-Americans, [voting together at the polls] is a strong tradition—a celebration—to overcoming obstacles to the right to vote." *Veasey v. Perry*, 71 F. Supp. 3d 627, 676 (S.D. Tex. 2014), *vacated in part on other grounds, and rev'd in part on other grounds sub nom. Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (*en banc*). The other two cases center on disabled Americans who could not physically access their neighborhood polling places. *Disabled in Action v. Board of Elections in City of New York*, 752 F.3d 189 (2d Cir. 2014); *Kerrigan v. Philadelphia Bd. Of Election*, No. CIV. A. 07-687, 2008 WL 3562521 (E.D. Pa. Aug. 14, 2008).

Besides the fact that *Veasey*, *Disabled in Action*, and *Kerrigan* did not consider a rational basis challenge to a statutory

right, they do not apply to this case for another salient reason. Those cases obliterated voting burdens that unduly encumber those with certain immutable characteristics: race and disability. Valenti's situation is quite different: committing a "Lewd or Lascivious Act with [a] Child Under 14 Years" is not an immutable characteristic. Rather, it is a voluntary act against a child victim that the state has lawfully circumscribed.

**IV**

There is no doubt here that Indiana has demonstrated a rational relationship between Ind. Code § 35-42-4-14(b) and their stated purpose of keeping serious sex offenders away from children on school property. For the foregoing reasons, we must uphold the statute and the district court's entry of judgment in favor of the state defendants.

AFFIRMED