In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1424

DRIVELINE SYSTEMS, LLC, an Illinois
limited liability company,

*Plaintiff-Appellant/*
*Counter-Defendant*,

*v.*

ARCTIC CAT, INC., a Minnesota
corporation,

*Defendant-Appellee/*
*Counter-Plaintiff*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:08-cv-50154 — **Frederick J. Kapala**, *Judge*.

---

ARGUED APRIL 3, 2019 — DECIDED AUGUST 23, 2019

---

Before WOOD, *Chief Judge,* and BAUER and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* Driveline Systems, LLC ("Driveline")
filed a breach of contract lawsuit against Arctic Cat, Inc.
("Arctic Cat") over a supply contract for specially manufac-
tured goods. Counts II-V were resolved against Driveline by
summary judgment. The remaining claim and Arctic Cat's
countersuit were resolved by a trial on the papers. Driveline
appeals the district court's grant of summary judgment on
Count II, arguing that there were genuine issues of material
fact which preclude summary judgment.

## I.  BACKGROUND

In 1999, Driveline's predecessor in interest, Valley Drive
Systems, Inc., began manufacturing parts for Arctic Cat and, in
May 2002, Driveline assumed control of Valley Drive Systems,
Inc.'s assets. In June 2002, Driveline and Arctic Cat entered
into a contractual agreement where Driveline would provide
specifically-manufactured hubs, axels/half-shafts, outer and
inner tie rods, shift shafts, and steering stops (the "Goods").
During the pendency of their relationship, Driveline was a
"just-in-time supplier" providing the Goods and taking and
filling orders daily with regular daily deliveries to Arctic Cat.

### A.  A Deteriorating Relationship

The production of axles/half-shafts constituted the majority
of Arctic Cat's purchases from Driveline, making up between
60-90 percent of total sales. In August 2007, Arctic Cat con-
tacted Driveline to request a price reduction. At around this
time, Arctic Cat received a bid from a foreign company to
produce the half-shafts for approximately $30/shaft—for a
projected monthly savings of approximately $200,000.00.
Throughout the rest of 2007, Arctic Cat and Driveline negoti-

ated about the future of Arctic Cat's half-shaft production business. An email before December 14, 2007, from Arctic Cat's Director of Supply Management, Chuck Hicks, to Driveline's Donald DiGiovanni, Jr., says Driveline will not be retaining the half-shaft business. Driveline disputes this, asserting it only became aware of the change in production on February 15, 2008, when it received a termination letter from Arctic Cat.

While the above negotiations were ongoing, Driveline and Arctic Cat's relationship continued as usual. From January 2007 through February 2008, Arctic Cat paid Driveline between $12 and $15 million for the Goods. But on January 21, Driveline halted all shipments to Arctic Cat, citing the ballooning amount due, $640,986.03, as accounts receivable. On January 24, 2008, Arctic Cat paid $371,387.27 and Driveline resumed shipments; a second check for $140,951.31 was issued on January 28. In early February 2008, Driveline again halted all shipments to Arctic Cat citing non-payment.

On February 8, 2008, Arctic Cat sent a letter to Driveline informing them that they were in breach of contract and as a result, any losses suffered by Arctic Cat would be the responsibility of Driveline. On the same day, Richard DiGiovanni of Driveline wrote a letter informing Arctic Cat that it was in arrears. The letter from Driveline went on to say that $185,241.60 was due immediately and all further shipments would be paid cash on delivery.

No further deliveries were made and, on February 15, 2008, Arctic Cat sent Driveline a letter terminating their relationship and notifying Driveline that they would be seeking reimbursement for any damages suffered as a result of their failure to

ship the Goods. On February 19, 2008, Arctic Cat sent a letter to Driveline demanding $540,750.00 for freight costs associated with Driveline's failure to deliver the Goods.

### B. Proceedings Before the District Court

On July 25, 2008, Driveline filed this lawsuit which was ultimately amended on February 27, 2015; Arctic Cat filed a counterclaim on January 13, 2009. Following cross-motions for summary judgment, the district court granted judgment for Arctic Cat on Counts II–V of the Revised Second Amended Complaint (the "Complaint"). Shortly thereafter, the parties went to trial on the papers, pursuant to Federal Rule of Civil Procedure 52 on Count I of the Complaint, Arctic Cat's Counterclaim, and prevailing party attorney's fees. The district court found that Arctic Cat was liable for $182,234.05 on Count I of the Complaint; Driveline was liable for $163,481.04 on the Counterclaim; and Arctic Cat was due $27,700.50 in prevailing party attorney's fees and costs. Ultimately, the district court entered judgment for Arctic Cat and against Driveline in the amount of $8,947.49.

Before the Court is Driveline's appeal from the district court's grant of summary judgment as to Count II of the Complaint. For the reasons that follow, we vacate the district court's decision and remand for further proceedings consistent with this opinion.

## II. ANALYSIS

Driveline argues that the district court erred when it determined that there were no genuine issues of material fact. They aver that: the parties were unable to agree on even the

most basic terms of the contract; there is an issue of fact on the timeliness of Arctic Cat's payment, the balance of the aged accounts, and most importantly, which party breached the contract first.

**A. Standard of Decision**

As an initial matter, Arctic Cat argues that Driveline is precluded from appealing the issues decided at summary judgment because those issues were expressly adjudicated during the district court's trial on the papers. If any review is proper, they argue that it should be under the clearly errone-ous standard. We disagree.

In *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910 (7th Cir. 2007), we reviewed a case with a similar procedural posture; a copyright issue was resolved at summary judgment and issues of damages were resolved by a jury. There the court applied the *de novo* standard of review to issues resolved at summary judgment. *Id.* at 914. In further support of their argument that the clearly erroneous standard applies, they say that the district court made further findings of fact during the trial on the papers. This is not clear from the court's January 23, 2018, Order, which says: "The facts in the section are derived from the summary judgment record." *Driveline Sys., LLC v. Arctic Cat, Inc.*, No. 1:08-cv-50154, Order *2 (N.D. Ill. Jan. 23, 2018). Moreover, it is unclear from the trial Order what factual issues were decided at trial and which were carried over from summary judgment. *See Id.* Accordingly, we apply the stan-dard of review consistent with an appeal from a motion for summary judgment.

Our review of a grant of summary judgment is *de novo* and all reasonable inferences are drawn in favor of the nonmovant. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). "Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A genuine issue of material fact exists whenever 'there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.'" *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018), *reh'g denied* (Oct. 30, 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court views the evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *Id.* The court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010).

## B. The Supply Contract and Its Terms

In its opinion, the district court acknowledges that it is tasked with "determining whether there is a genuine issue of material fact as to who breached first." *Driveline Sys., LLC*, Order \*12. Because, under Illinois law, "a material breach of a contract provision will justify nonperformance by the other party." *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1025 (Ill. App. 2012). In order to determine which party breached first, the district court had to find as a matter of fact what the terms of the contract were. *Mulliken v. Lewis*, 615

N.E.2d 25, 27 (Ill. App. 1993) ("Whether a contract exists, its terms, and the intent of the parties are *questions of fact* for the trier of fact."). The relationship between the parties was governed by a mosaic of agreements. The Supply Contract was entered into in January 2006 and purported to govern the sale of the Goods. However, both Driveline's invoices and Arctic Cat's purchase orders (called scheduling agreements) contained conflicting terms. The result was a battle of forms and, as the district court properly found, no contract was formed pursuant to § 2-207 of the Uniform Commercial Code ("UCC" or the "Code"), as codified at 810 Ill. Comp. Stat. § 5/2-207. Accordingly, § 2-207(3) of the Code controls and the contract consists of non-conflicting terms, the Code's supplementary terms, and the conduct of the parties.

The district court determined that promptness of delivery was an undisputed material term. The writings of Arctic Cat explicitly called for timely deliveries and made clear that this was material to the agreement and their business as a whole. Driveline does not dispute this assertion, and moreover, the conduct of the parties during their relationship supports this conclusion. Next, the district court found that there was no term discussing promptness of payment, and while Driveline's Richard DiGiovanni's affidavit stated Driveline called for prompt payment, it was required to do more than make an unsupported assertion at the put up or shut up stage of litigation. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). The district court correctly found that prompt payment was not a material term and instead the Code's gap-filler provision would control.

The Code states if time for payment is not specified, payment should be made within a reasonable time. 810 Ill. Comp. Stat. 5/2-309. But the district court failed to examine the parties' course of dealings to determine what a reasonable time would be, given the circumstances. Instead, the district court looked to the balance of the aged accounts receivable and determined that Arctic Cat was slightly delayed in making payments and found that slight delay was not sufficient to forgive Driveline's subsequent breach. The district court noted that Driveline excused late payments nearly a dozen times a year but did not find that any of those late payments were made after an unreasonable length of time, nor note that any of the circumstance surround those payments, or what percentage of payments were late.

This is the type of a genuine dispute as to a material fact which should have precluded summary judgment. In order to find that Arctic Cat's delay in payment was or was not a breach, the court would have to first conclude what a reasonable time was under the circumstances before it concluded Arctic Cat was not in breach. 810 Ill. Comp. Stat. 5/2-309(1) § 1 cmt (requiring a reasonable time be determined in light of: "good faith and commercial standards […] the contractual circumstances, usage of trade or course of dealing or performance.").

### C.  Other Issues of Material Fact Exist

The district court failed to consider the other circumstances surrounding Driveline's suspension of shipments, specifically Arctic Cat's apparent termination of its half-shaft business. Other factual ambiguities existed at the time the district court

granted summary judgment for Arctic Cat, specifically: what terms of the Code or Supply Contract governed the end of the parties' relationship, when Driveline knew it would not be retaining the half-shaft business, and if any phase-out plan had been discussed.

These factual issues are material because if the Supply Contract is silent on the dissolution of the contract, § 2-309 of the Code would control. Section 2-309 requires that reasonable notification of termination be provided to the other party. *Id*. at § 2-309(3). This is based on "principles of good faith and sound commercial practice [which] normally call for such notification of the termination of a going contract relationship[.]" *Id*. at § 2-309 § 8 cmt. Accordingly, it was necessary to find what governed the winding down of the Supply Contract and when Arctic Cat provided notice to Driveline that they would not be retaining the half-shaft business.

### III. CONCLUSION

Because genuine issues of material fact exist, neither party is entitled to judgment as a matter of law. The district court's grant of summary judgment is vacated and the matter is remanded to the district court for further proceedings consistent with this opinion.