NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 13, 2019
Decided December 10, 2019

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-1958

| | |
|---|---|
| JEFFREY MALKAN, <br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 18 CV 7810 |
| AMERICAN BAR ASSOCIATION, et al., <br>     *Defendants-Appellees*. | John Robert Blakey, <br> *Judge*. |

**ORDER**

After his contract as a clinical law professor was not renewed, Jeffrey Malkan brought, and lost, a federal suit for wrongful termination against the law school dean who fired him. Malkan then brought this suit against the American Bar Association, arguing the ABA had failed to enforce its own accreditation standards, which amounted to fraud and negligent misrepresentation against him. The district court concluded that Malkan lacked standing to sue under Article III of the U.S. Constitution because he did not allege an injury traceable to an action of the ABA. We agree and affirm the judgment, with one minor modification.

## Background

In 2000, Jeffrey Malkan accepted a position as Clinical Associate Professor of Law at the State University of New York at Buffalo School of Law, with a separate appointment as Director of the Legal Research and Writing Program. Six years later, the Law School recommended his reappointment and promotion to Clinical Professor of Law.

Malkan was offered a three-year term contract by the law school's then-dean, who represented that the contract was intended to comply with the ABA's rules, including Accreditation Standard 405(c). Standard 405(c) requires law schools to afford full-time clinical faculty a "form of security of position reasonably similar to tenure." ABA STANDARDS AND RULES OF PROCEDURE FOR APPROVAL OF LAW SCHOOLS, at 29 (2016–2017). Several interpretations accompany Standard 405. *Id*. at 29–30. Interpretation 405-6 explains that a law school can satisfy Standard 405(c) by providing a separate tenure track or a program of renewable long-term contracts. *Id*. A "long-term contract," according to this interpretation, is either a presumptively renewable five-year contract or some "other arrangement sufficient to ensure academic freedom." *Id*. at 30.

Malkan accepted the contract, assuming its compliance with Standard 405(c) meant it was presumptively renewable, and that he could not be terminated without cause and due-process protections in the form of a vote by tenured faculty.

Two years later, the Law School's interim dean Makau Mutua—without faculty input or recommendation—issued a notice of non-renewal that terminated Malkan's employment at the end of his contract, in August 2009. Malkan says he is not alone, and that at the law school between 2009 and 2016 Mutua terminated every single 405(c)-protected clinical professor.

Malkan sued Mutua in the U.S. District Court for the Western District of New York, alleging that Mutua violated Malkan's due process rights by unilaterally declining to renew his contract. *See Malkan v. Mutua*, No. 1:12-CV-00236 (MAT), 2016 WL 7335574 (W.D.N.Y. Dec. 18, 2016). The district judge, adopting a magistrate judge's recommendation, entered summary judgment for Mutua. *Malkan*, 2016 WL 7335574, at *2. As the court explained, state regulations governing appointments in SUNY schools limit a term appointment to no longer than three years, so Malkan had no "legal right,

interest, or expectancy" in a renewed appointment. *Id.*; 8 N.Y.C.R.R. §§ 338.2, 335.10. The Second Circuit affirmed, agreeing that the state regulations prevented the law school from providing presumptively renewable contracts and, therefore, Malkan was not entitled to have his contract renewed. *Malkan v. Mutua*, 699 Fed. Appx. 81, 82–83 (2d Cir. 2017). Those state regulations, the appeals court concluded, could not be overridden by the "[law school's] by-laws, customs, accreditation reports, the [ABA's] standards, [or] his contract." *Id.* at 83.

Meanwhile, in 2016 Malkan had contacted the ABA's Accreditation Committee and stated that the law school had repudiated Standard 405(c) because, as the magistrate judge's recommendation found, New York regulations prevented the law school from granting term appointments greater than three-years. Those state regulations, Malkan argued, made compliance with Standard 405(c) impossible because they prevented the law school from honoring his presumptively renewable contract. The Committee took no enforcement action against the law school. After the Second Circuit affirmed the district court's judgment, Malkan provided the Committee with a copy of that decision as conclusive proof that the law school had repudiated Standard 405(c). Again, he urged that because the law school could not legally honor his presumptively renewable contract, the law school could not possibly comply with Standard 405(c). The Accreditation Committee's Counsel responded that Malkan had failed to allege the law school had violated the ABA Standards.

Malkan then brought this diversity action against the American Bar Association, its Council of the Section of Legal Education and Admissions to the Bar, and its Accreditation Committee (collectively "the ABA"). He sought damages, alleging that the ABA's continued accreditation of the law school, despite evidence that the school had repudiated Standard 405(c), constituted common law fraud and negligent misrepresentation under Illinois law. This fraud, Malkan asserted, enabled the Attorney General of New York to persuade the Second Circuit that the law school could not legally comply with Standard 405(c). He also sought a declaratory judgment that the law school was not in compliance with Standard 405(c).

The ABA moved to dismiss the complaint for lack of standing. The ABA argued it had nothing to do with the decision to terminate Malkan's contract, so Malkan had not alleged any injury traceable to the ABA. The district court agreed, finding "zero

connection" between Malkan's termination-related injuries and the ABA's decision to accredit the law school.

## Analysis

On appeal, Malkan challenges the district court's standing decision. He argues the district court misunderstood the injury he attributes to the ABA: He seeks redress not for the stigma caused by his wrongful discharge, but rather for the violation of his due-process right to a fair hearing in his suit against former-Dean Mutua, an injury Malkan traces to the ABA's refusal to bring the law school into compliance with Standard 405(c). By Malkan's account, the ABA failed to take enforcement action against the law school for repudiating Standard 405(c), despite having conclusive proof as early as 2016—when Malkan filed his first complaint—that state regulations prevented the law school from granting presumptively renewable contracts.

To establish Article III standing, Malkan must show that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct of the ABA, and which is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). But Malkan's attempt to connect the ABA to his due-process right to a fair hearing in his case against Mutua fails because the final decision in that case resulted from the independent action of third parties (e.g., former-Dean Mutua, the attorney general of New York, the Western District of New York district court, and the Second Circuit appellate court). A plaintiff does not have Article III standing where the alleged injury "results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976); *see Segovia v. United States*, 880 F.3d 384, 388–89 (7th Cir. 2018). The ABA had nothing to do with Malkan's termination, and it was not a party to his suit against former-Dean Mutua. The ABA was not even aware of the law school's supposed repudiation of Standard 405(c) until 2016, after the law school had already raised its defenses to Malkan's termination in federal court. Further, the Second Circuit expressly declined to consider any potential argument regarding the law school's alleged accreditation fraud and the ABA, and instead based its decision solely on the New York regulations that precluded SUNY schools from providing presumptively renewable contracts. *Malkan*, 699 Fed. Appx. at 83.

In his reply brief, Malkan argues the district court erred by dismissing his complaint with prejudice without giving him an opportunity to amend. We conclude the district court did not abuse its discretion. As an initial matter, arguments raised for the first time in a reply brief are waived. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 843 (7th Cir. 2018). Waiver to the side, it is true that a district court should grant a plaintiff at least one opportunity to amend the complaint before dismissing the action under Rule 12(b)(6), but only if doing so would not be futile. *See Runnion v. Girl Scouts*, 786 F.3d 510, 519–20 (7th Cir. 2015). Malkan has presented nothing that suggests amendment would not be futile. He does not contest that he represented to the district court that his complaint did not require any amendments.[1] Further, his reply brief does not hint at any argument as to how he could amend his complaint to avoid dismissal. At oral argument, we inquired what a post-remand amendment would include, and Malkan asserted standing would have been obvious if the district court had properly understood his theory of the case. We have already rejected that argument.

One modification to the district court's judgment is required, however. "When a district court dismisses an action for lack of jurisdiction, the dismissal must be without prejudice." *Lennon v. City of Caramel, Ind.*, 865 F.3d 503, 509 (7th Cir. 2017) (modifying dismissal for lack of jurisdiction to be "without prejudice" and affirming without remand); *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (dismissing a suit for lack of jurisdiction cannot be with prejudice, a merits disposition that only a court with jurisdiction can render). The district judge's case procedure on a motion to dismiss, with its notable and important goal of efficiency, very well may lead to dismissal of the case. *See supra* note 1. But here that dismissal must be without prejudice because Malkan's suit was dismissed for want of subject matter jurisdiction.

Because Malkan's purported due-process injury is not traceable to the ABA's enforcement actions, the judgment in this case—as modified to be without prejudice—is AFFIRMED. Notwithstanding this modification, should Malkan sue the ABA again, he

---

[1] "If the non-moving party elects not to amend its pleading to address the purported deficiencies raised by [a] motion [to dismiss]," according to a case procedure adopted by Judge Blakey, "the Court may dismiss the case with prejudice and not provide further opportunity to amend the pleading absent extraordinary circumstances." *See* N.D. ILL., JUDGE JOHN ROBERT BLAKEY, CASE PROCEDURES: MOT. TO DISMISS.

does so at his own peril, given the presumed futility of amending his claims and his inability to offer anything new before the district court as well as in this appeal.