In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3012

DORCUS WITHERS,

*Plaintiff-Appellant*,

*v.*

WEXFORD HEALTH SOURCES, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:09-cv-1035-HAB-JAG—**Harold A. Baker**, *Judge*.

SUBMITTED FEBRUARY 14, 2013—DECIDED FEBRUARY 27, 2013

Before POSNER, WOOD, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*.  The plaintiff, an inmate of the Danville Correctional Center, an Illinois prison, brought this suit under 42 U.S.C. § 1983 against a variety of health professionals employed by or under contract to the prison. The suit charges deliberate indifference to the plaintiff's medical needs, in violation of the cruel and unusual punishments clause of the Eighth Amendment, made applicable to state action by interpretation of the

due process clause of the Fourteenth Amendment. (In a suit under section 1983 the contractor's employees are deemed agents of the state. *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010).) The district judge granted summary judgment in favor of the defendants.

The plaintiff suffers from scoliosis, which is lateral curvature of the spine; on an x-ray the spine appears from the front or back to be S- or C-shaped rather than I-shaped. Depending on the degree of curvature, scoliosis can be a mild condition, as in the plaintiff's case, or severe and seriously deforming, as famously in the case of King Richard III of England, as we have learned from the recent exhumation of his skeleton. John F. Burns, "Skeleton in British Parking Lot Hailed as Richard III," *N.Y. Times*, Feb. 5, 2013, p. A4.

The defendants refused the plaintiff's repeated—incessant, really—requests for a lower bunk rather than the upper bunk to which he had been assigned and also for a medical mattress, a back brace, and orthopedic shoes. The evidence is overwhelming that he had no medical need for any of these things (with the possible exception, as we're about to see, of a lower bunk); that his condition was not serious enough to warrant them; that he is a malingerer. He did have frequent flare-ups of back pain, however; and although the precise causal relation between scoliosis and back pain is unclear, back pain has been found to be considerably more common among person with scoliosis, see Manuel Rigo, "Differential Diagnosis of Back Pain in Adult Scoliosis (Non Operated Patients)," 5 *Scoliosis* O44 (Supp. 1, 2010);

Hans-Rudolf Weiss et al., "Physical Exercises in the Treatment of Idiopathic Scoliosis at Risk of Brace Treatment," 1 *Scoliosis* 6 (2006); N.E. Goldberg et al., "The Ste-Justine Adolescent Idiopathic Scoliosis Cohort Study. Part III: Back pain," 19 *Spine* 1573 (1994)—depending however on what type of scoliosis the person has, see, e.g., Per Trobisch, Olaf Suess & Frank Schwab, "Idiopathic Scoliosis," 107 *Deutsches Ärzteblatt International* 875 (2010); and we don't know what type the plaintiff has. But he received appropriate treatment for back pain with painkilling drugs such as Ibuprofen. (The fact that he was prescribed such drugs is evidence that he really did have back pain.)

There is, however, one troubling feature of the case. It involves an encounter that the plaintiff had with a registered nurse named Debra Miller, one of the defendants. The plaintiff alleges that one night, because of back pain that he was experiencing, he asked her to let him stay overnight in the prison's Health Care Unit. He says that she refused and wheeled him back to his cell in a wheelchair; that he told her he wouldn't be able to climb into his bunk (the upper one) and she replied "when you get tired you'll figure it out," and left him; that because of his back pain he fell trying to climb into the upper bunk—there was no ladder—and as a result was injured. If this narrative is true, it is evidence of deliberate indifference to an imminent danger of injury to a prisoner and gives him a valid claim to relief under section 1983. *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir. 1995) (per curiam); *United States v. Gonzales*, 436 F.3d 560,

574 (5th Cir. 2006); cf. *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002).

The evidence may be false, though we note that, judging from recent cases, absence of ladders is a common feature of prison bunk beds. See *Robinett v. Correctional Training Facility*, No. C 09-3845 SI, 2010 WL 2867696, at *2 (N.D. Cal. July 20, 2010); *Brown v. Anderson*, No. 6:09-2632-JFA-WMC, 2010 WL 199692, at *2 (D.S.C. Jan. 13, 2010); *Jones v. Louisiana Dept. of Public Safety & Corrections*, No. 08-cv-1507, 2009 WL 1310940, at *2 (W.D. La. May 11, 2009); *Connolly v. County of Suffolk*, 533 F. Supp. 2d 236, 241 (D. Mass. 2008). The plaintiff stated in his deposition that none of the bunk beds in his prison has a ladder, and the defendants have not contested the statement. We attach a photograph that we discovered of the ladderless bunk beds in a California prison. One can see how a prisoner with back trouble might hurt himself trying to climb into the upper bunk.



Even if all the plaintiff's allegations are true, however, they don't make a conclusive case of deliberate indifference. The nurse may, in light of the plaintiff's record of malingering, have believed that he would have no difficulty climbing to the upper bunk, or at least that he would not fall and hurt himself. She may have believed that he was just trying to lie his way into a more comfortable bed in the Health Care Unit. See *Ramos v. Patnaude*, 640 F.3d 485, 490 (1st Cir. 2011); *Weaver v. Shadoan*, 340 F.3d 398, 412 (6th Cir. 2003). But as yet his version of the incident stands unrebutted. The district judge did not discuss it, although he may have been alluding to a garbled version of it when he said that the plaintiff had alleged that Nurse Miller "knew [the plaintiff] was unable to get into a high bunk, but would

not approve his request for a low bunk. The plaintiff says he eventually fell out of his bunk and injured himself. The plaintiff has presented no evidence to support his claims beyond his unsupported accusations." Unsupported accusations when sworn to are evidence.

The nurse knew that the plaintiff had scoliosis and intermittent back pain and may also have known that a deformity of the spine can make it difficult, whether because of scoliosis-related back pain or some other consequence of that condition, for a sufferer from scoliosis to climb to an upper bunk safely without using a ladder. We are mindful that there is "another way people get up to the top bunk (especially teenagers)"—"by stepping onto the bottom bunk, and then either climbing or jumping up to the top bunk." WikiHow—To Do Anything, "How to Get Up to the Top Bunk of a Bunk Bed," www.wikihow.com/Get-Up-to-the-Top-Bunk-of-a-Bunk-Bed (visited Feb. 17, 2013). But "you need to have fairly good upper-body strength for this though." *Id*. It may not have been a feasible alternative to a ladder for this plaintiff, given his condition.

The statement of the nurse that the plaintiff quotes—"when you get tired you'll figure it out"—doesn't appear in his deposition, although the other allegations that we summarized do. Part of the quoted statement—the clause "when you get tired"—appears nowhere in the record. The rest of the clause, however—"you'll figure it out"—appears in two prison grievances, signed and filed by the plaintiff filed, that are in the record. Although they were not signed under penalty

of perjury, the plaintiff submitted with them a declaration that he did sign under penalty of perjury; and the declaration states that "the foregoing documents are known to me and are accurate to the best of my knowledge and belief."

Thus there appears to be a genuine issue of material fact concerning deliberate indifference by the nurse. If the issue can't be resolved in further pretrial proceedings, the plaintiff will be entitled to a trial—though on that issue alone, concerning that defendant alone; in all other respects the grant of summary judgment in favor of the defendants is unassailable.

The judgment is therefore affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED.