In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1384

LEROY PALMER,

*Plaintiff-Appellant*,

*v.*

CRAIG P. FRANZ, RN,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 01698 — **Thomas M. Durkin**, *Judge.*

ARGUED JANUARY 16, 2019 — DECIDED JUNE 26, 2019

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* LeRoy Palmer ("Palmer") is an inmate
in the custody of the Illinois Department of Corrections
("IDOC"). In lieu of a left-hand, Palmer has a nub which
terminates at the wrist and does not have any functional
fingers.

Prior to his residency at the Northern Reception and Classification Center (the "NRC"), Palmer was a resident of the Shawnee Correctional Center ("Shawnee"). While at Shawnee, the medical director issued Palmer a low bunk pass for an indefinite duration.

In preparation for a court appearance in Cook County, Palmer was transferred to the NRC on January 11, 2012. When he arrived defendant Craig P. Franz ("Franz"), an employee of Wexford Health Services, Inc. ("Wexford"), conducted a routine intake screening. A transferred inmate is accompanied by a transfer summary completed by the originating institution. The top half of Palmer's intake form had been completed by a nurse at Shawnee and noted Palmer's missing hand. Franz noted the deformity but ignored Palmer's explicit request for a low bunk permit. Franz took no other steps in conjunction with Palmer's deformity or his request for an accommodation: he did not issue a permit, notify any other member of the medical staff, or put Palmer in queue to see a doctor.

When Palmer was escorted to his assigned cell the bottom bunk was occupied. Palmer informed the guard that he had a low bunk pass at Shawnee but was told that without a pass for the NRC, the guard could not do anything. Palmer was forced to use the top bunk.

Over the next eleven days Palmer made two requests to see a doctor to get a low bunk pass; neither request was acknowledged. On the morning of January 22, 2012, Palmer fell while attempting to climb down from the upper bunk. He landed on his knee and suffered a severe injury. Following his fall from

the top bunk, Palmer was issued a low bunk permit and assigned to a low bunk.

From February 2, 2012, through July 11, 2012, Palmer was transferred throughout the Illinois correctional system. He was transferred from the NRC to the Cook County Jail, back to the NRC, and back to Shawnee before he was again transferred to the NRC. In April and August of 2012, Palmer filed grievances with IDOC because he was unable to secure a low bunk permit and as a result he was injured.

On September 12, 2012, after not receiving a response to his grievances, Palmer appealed the apparent denials to the Administrative Review Board, which also went unanswered.

On March 5, 2013, Palmer filed a complaint in the United States District Court for the Northern District of Illinois. On March 11, 2013, the district court granted Palmer's motions to proceed *in forma pauperis* and for the appointment of counsel pursuant to the local rule. Finally, the operative complaint (Fourth Amended Complaint) was filed.

This Complaint alleged, *inter alia*, that Franz was deliberately indifferent to Palmer's serious medical need when he refused to issue a low bunk permit and that this constituted a violation of the Eighth Amendment.

Following the close of discovery, Franz filed a motion for summary judgment arguing that: Palmer's deformity did not constitute a serious medical need; Palmer failed to show Franz was subjectively aware of the alleged medical need; and that Palmer failed to show Franz was deliberately indifferent to any medical need or risk.

On September 18, 2017, the district court granted Franz's motion for summary judgment. The court determined that Franz was not deliberately indifferent to Palmer's serious medical need because he was not authorized to issue a low bunk permit and he was unaware of any issue regarding Palmer's bunk assignment. And, Palmer's negligence claim raised issues of medical judgment, and necessarily implicated the Healing Arts and Medical Practices Act that Palmer had not complied with. The district court entered judgment in favor of Franz on Palmer's Eighth Amendment claim and dismissed Palmer's negligence claim without prejudice.

## DISCUSSION

### A. The Standard of Review

Our review of a district court's grant of summary judgment is *de novo* and all reasonable inferences are drawn in favor of the nonmovant. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). "Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To succeed in his claim for a violation of the Eighth Amendment, Palmer must show he faced a substantial risk due to an objectively serious medical condition and that Franz was deliberately indifferent to that risk. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015).

> "An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated."

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). If Palmer can prove the objective component, he must then show that Franz deliberately disregarded the risk of harm. "This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

### B.  A Jury Could Conclude that Palmer Faced a Substantial Risk of Harm Due to His Physical Deformity

The district court properly found that a jury could conclude that Palmer's physical disability constituted a serious medical condition and required an accommodation. Palmer's malformed left hand is precisely the type of medical condition that was diagnosed by a physician as mandating treatment and is so obvious that even a lay person could perceive the need for an accommodation. *Gayton*, 593 F.3d at 620.

Franz argues that Palmer did not establish that he suffers from an objectively serious medical condition. Franz suggests that ignoring Palmer's deformity would not result in further injury or a wanton infliction of pain because Palmer was born with this condition and has learned to adapt to his physical limitations. This argument is without merit. The district court properly applied Seventh Circuit precedent when it stated: "[a]lthough Palmer's medical condition may not have required treatment *per se*, it did require [an] accommodation." *Palmer v. Franz*, No. 13-cv-1698, 2017 WL 4122741, at *4 (N.D. Ill. Sept. 18, 2017). Here, it is plainly obvious that Palmer had a physical deformity that was obvious to a lay person. As a result of the deformity, Palmer required additional medical care. While medical care was not "treatment" in the traditional sense, Palmer's deformity did require an accommodation—a low bunk permit. Accordingly, we agree with the district court that Palmer's physical disability constituted a serious medical condition necessitating an accommodation under the Eighth Amendment.

Franz advocates for a standard which would mean that an inmate born missing a leg could be forced to hop or crawl through a correctional facility because his deformity would not directly cause further injury or pain and because he would have learned to adapt to his condition. We decline Franz's invitation to implement this new standard.

There is evidence to suggest Franz was deliberately indifferent to the risk posed by Palmer's congenital deformity. Our decision in *Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013), is informative. In *Withers*, we noted that a nurse's insouciance to an inmate's inability to climb onto a high bunk was evidence of deliberate indifference to a heightened risk of harm. There, the inmate informed the nurse that he could not climb onto his bed, but she responded that when he was tired enough he would make the climb. He tried but fell. *Id.* at 689. Here, Franz was alerted to the risk of harm but declined to take any affirmative steps to mitigate the risk.

The district court found that Franz was powerless to help Palmer in his pursuit of a low bunk pass. The district court also found that various witness's testimony and other evidence was not sufficient to create a factual dispute about what Franz could have done to secure Palmer's low bunk pass. But, this determination is contrary to our precedent.

"In deciding a motion for summary judgment, neither the district court nor this court may assess the credibility of witnesses … or balance the relative weight of conflicting evidence. The courts must view all the evidence in the record in the light reasonably most favorable to the nonmoving

parties." *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010).

Here, Palmer presented testimony evidence from an IDOC representative who testified that: an inmate with an existing low bunk pass could be issued a low bunk pass upon arrival at the new facility, given a bridge order until a permanent pass is issued, given a temporary pass by the screening nurse, or the nurse could insure that the inmate promptly saw a doctor. This evidence is sufficient to create a competing inference which should have been presented to the jury.

## CONCLUSION

Here, the evidence is enough to allow a reasonable jury to conclude that: Palmer suffered from an objectively serious medical condition; Franz knew of the heightened risk of harm; and Franz deliberately failed to act in the face of that harm. Because a reasonable jury could have concluded that Franz's refusal to act was a conscious decision to ignore the risk of harm posed to Palmer, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.