In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 19-1420

VICTOR BROWN,

*Plaintiff-Appellant,*

*v.*

SUE PETERS, *et al.,*

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 18-CV-1957 — **William E. Duffin**, *Magistrate Judge.*

_____

SUBMITTED AUGUST 29, 2019[*] — DECIDED OCTOBER 10, 2019

_____

Before WOOD, *Chief Judge,* and SCUDDER and ST. EVE, *Circuit Judges.*

[*] The defendants were not served with process in the district court and are not participating on appeal. We have agreed to decide this case without oral argument, because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

WOOD, *Chief Judge*.  In *Coleman v. Labor & Industry Review Commission*, 860 F.3d 461 (7th Cir. 2017), we held that a magistrate judge does not have the authority to enter a final judgment in a case when only one party—in that case, the plaintiff—has consented to the magistrate judge's jurisdiction. See 28 U.S.C. § 636(c). That rule holds, we said, even if the magistrate judge is engaged in nothing more than the screening process required for a case brought by a prisoner who wishes to proceed *in forma pauperis*. See 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A. If the magistrate judge concludes that the case must be dismissed for failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(6), that is a disposition on the merits, and therefore, in the absence of valid consents, the judge is empowered to do no more than submit a report and recommendation to an Article III judge for final resolution. *Coleman*, 860 F.3d at 475.

The present appeal presents a new wrinkle for cases at the screening stage: is it possible for the state defendant to consent in advance to the magistrate judge's jurisdiction to conduct the initial case screening and, if the plaintiff has also filed his consent, to enter a final judgment dismissing the case with prejudice? That is exactly what the Wisconsin Department of Justice and the U.S. District Court for the Eastern District of Wisconsin have attempted to accomplish through a Memorandum of Understanding (MOU) that became effective in 2018, apparently in response to *Coleman*.

We reproduce the MOU in its entirety in the Appendix to this opinion. For present purposes, however, it is enough to say that it covers civil cases brought under 42 U.S.C. § 1983 by an incarcerated person, when those cases must undergo initial screening by the district court under 28 U.S.C. § 1915A. MOU

¶ 2. In the MOU, the state Department of Justice has entered "a limited consent to the exercise of jurisdiction by United States Magistrate Judges" to do a number of things. In paragraph 3(1), the state consents without qualification to the magistrate judge's conduct of the initial screening described by sections 1915A and 1915(a) and (e)(2)(B). That logically includes the authority either to dismiss the case after screening, or to allow it to move forward. Paragraph 3(4) addresses the situation in which the judge may conclude that the case should be dismissed *before* screening for administrative reasons, such as a failure to pay the filing fee, the failure to submit a proper application to proceed *in forma pauperis*, or the existence of a filing bar. In those cases, the state consents to involuntary dismissal before the initial screen. Finally, the MOU addresses the situation in which "any part of the case survives initial screening." MOU ¶ 4. At that point, "the appropriate entity within the Department of Justice will be served with the complaint and will be provided the opportunity either to consent to the continued exercise of jurisdiction by the Magistrate Judge who conducted the initial screen or to refuse consent … ." *Id.* In the case of a refusal, the MOU states that the case will go back for random assignment to a district judge. *Id.*

We turn in a moment to the way in which those procedures were applied in this case and whether they are consistent with the Magistrate Judge's Act and the *Coleman* decision. The MOU applies only to certain types of cases, however, and so we must take a look at the facts before us to ensure that this is one of them.

Our case arose when Victor Brown, a Wisconsin prisoner housed in the Green Bay Correctional Institution (GBCI), cut

himself severely while he was in the restrictive housing unit. He bled all over the floor as a result. Later he notified a correctional officer about his injury. Someone put him in a wheelchair and took him to the health services unit, where an unknown nurse assessed him. The nurse could see from his chart that this was not his first self-inflicted wound. She found that his vital signs were stable and arranged for him to be placed under observation.

The next day, two more nurses (neither of whose identity Brown knows) assessed Brown again. Initially they found that he was stable, but later that day he told the staff that he was having chest pains and feeling very weak. Nurse Shane ordered him to be taken to a local hospital's emergency room, where he was assessed. The ER personnel determined that he had suffered a blood loss requiring a transfusion of three units of blood (approximately three pints—about a quarter of the total blood supply of an average male adult, https://www.medicalnewstoday.com/articles/321122.php). He received the necessary transfusion, and for all that this record shows, that was the end of the story—he lodged no further complaints. In time, however, Brown sued the prison nurses, asserting that they had exhibited deliberate indifference to his serious medical needs by not sending him to the ER sooner.

Following its routine procedures and the MOU, the district court sent the case to Magistrate Judge Duffin for initial screening. On December 28, 2018, Brown consented pursuant to 28 U.S.C. § 636(c) to the authority of the magistrate judge to resolve the entire case. Magistrate Judge Duffin accordingly noted in his order that "the court has jurisdiction to resolve Brown's motions and to screen his complaint in light of his

consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court." With those consents secure, the magistrate judge went on to conclude that Brown failed to state a claim on which relief could be granted, because none of his allegations supported a finding that any of the nurses was deliberately indifferent toward his medical needs. The order ends by stating that "[t]his order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit … ."

Were it not for the MOU, we would be compelled to vacate the magistrate judge's order and remand for proceedings consistent with *Coleman*. Typically, that would involve the conversion of the final disposition to a report and recommendation from the magistrate judge to a district court judge, and then a final determination by the district court. Those steps are necessary even for named defendants who have never been served. *Coleman*, 860 F.3d at 475; see also *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017) (agreeing with *Coleman*).

Brown named four defendants, two identified by name, and two only by pseudonym. Neither of the named defendants was served with process. But, given the MOU, that is not the end of the story. The two named defendants, Sue Peters (identified elsewhere as a nurse practitioner at GBCI) and Jean Lutsey (the GBCI Health Service Manager, according to the website), both appear to be state employees, and thus within the scope of MOU ¶ 2. If the case were to proceed beyond screening, then they would be entitled to notice from the Department inquiring about their interest in having the

Department accept service of process on their behalf. See Memorandum of Understanding (Service of Process) ¶ 3 (March 24, 2010), U.S. District Court for the Eastern District of Wisconsin, Local Rules and Orders, Standing Order (number 13 in list), https://www.wied.uscourts.gov/local-rules-and-orders.

The question is whether the consent on behalf of the two state employees to have the magistrate judge perform the initial screening of Brown's complaint is enough to satisfy the Magistrate Judge's Act, 28 U.S.C. § 636(c). We see no reason why it should not be. *Cf. National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964) (upholding advance agreement to the personal jurisdiction of a court). During the stage of litigation between the filing of the complaint and formal service of process on the defendant(s), counsel for the defendants is entitled to speak for her clients. The defendant has some role in the case even before service is complete. For example, the defendant must respond to a notification that the action has been filed and a request for waiver of service, FED. R. CIV. P. 4(d)(1). Screening of cases brought by prisoners who want to proceed *in forma pauperis* against "a governmental entity or officer or employee of a governmental entity" is another activity that, by design, takes place before service. 28 U.S.C. §§ 1915A (screening); 1915(d) (service of process after screening). If the state wishes to take the position, as Wisconsin has done, that its entities, officers, and employees are represented by the state Department of Justice during that period, that is its business. Moreover, it seems exceedingly unlikely that a state entity, officer, or employee would object to that term of employment. And if it did object, nothing in the MOU prevents anyone from retaining personal counsel.

There is one more aspect of the MOU that deserves atten-
tion. Paragraphs 3 and 4 stipulate that the MOU creates only
a limited consent for the preliminary phases of the case—that
is, the phase that deals with screening. If the case is resolved
at that point, nothing else need be done. But if "any part" of
the case survives screening, then paragraph 4 provides that
the appropriate entity will then be served with process and
will have the opportunity either to consent to the magistrate
judge's continuing authority to resolve the case, or to object
and have the case transferred to an Article III district judge.
That raises the question whether this part of the process is
consistent with 28 U.S.C. § 636(c)(4), which provides as fol-
lows:

> The court may, for good cause shown on its own
> motion, or under extraordinary circumstances shown
> by any party, vacate a reference of a civil matter to a
> magistrate judge under this subsection.

In order to implement subpart (c)(4) "by the book," it appears
that it would be necessary for the party wishing to revoke
consent to the magistrate judge's authority to file a motion
with "the court" to vacate the reference. (There is some ques-
tion whether the magistrate judge is authorized to rule on a
motion to withdraw consent or if only a district court judge
may do so. Compare *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d
1095, 1097 (7th Cir. 1987) (accepting the magistrate judge's de-
cision not to vacate consent without any discussion of this is-
sue), with *Branch v. Umphenour*, 936 F.3d 994, 1002 (9th Cir.
2019) (holding that only the district judge may vacate a refer-
ence to a magistrate judge). We need not resolve that question
here, as it does not appear that anyone has tried to revoke
consent.) When a motion to revoke consent has been filed, the

court must decide whether the progression of the case from screening to the ordinary pretrial stage, perhaps along with other factors, amounts to either "good cause" or "extraordinary circumstances" as the Act uses those terms.

Sound judicial management of these cases might well factor into the determination of good cause. So too should the effort of the Wisconsin Department of Justice to respect the strictures of the Magistrate Judge's Act and at the same time ensure the autonomy of the parties it represents. Other facts may also deserve consideration. This is not the case in which to test the limits of "good cause" in this unique setting, and so we refrain from doing so.

We hold that the "Limited Consent to Magistrate Judge Jurisdiction To Conduct Initial Case Screening" adopted by the U.S. District Court for the Eastern District of Wisconsin and the Wisconsin Department of Justice satisfies the requirement in 28 U.S.C. § 636(c) that *both* parties consent to magistrate judge authority to resolve a case with a final judgment. That includes the authority to decide that a prisoner's complaint fails to state a claim upon which relief can be granted. In the present case, that is exactly what Magistrate Judge Duffin concluded. Only two named defendants were before him, and he had this to say about them:

> [T]he court notes that [Brown] names Sue Peters and Jean Lutsey as defendants but does not allege any facts supporting a claim that either of them violated his constitutional rights. Under section 1983, an individual can be liable only if that individual is personally responsible for a constitutional deprivation. … There is no supervisory liability, collective liability or vicarious liability under 42 U.S.C. § 1983. In other words, there

is no liability unless the defendant is personally involved in the violation of plaintiff's rights. … Therefore, Brown may not proceed against Sue Peters or Jean Lutsey.

(Citations omitted.) With respect to the Doe defendants, the court added that it saw nothing in Brown's allegations that would amount to deliberate indifference.

We agree with this assessment of Brown's case. To state a claim, Brown needed to allege that the nurses were deliberately indifferent to his medical needs after he engaged in self-harm. See *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019). But no trier of fact could so find in light of Brown's allegations. After he cut himself, a nurse saw him, checked his vital signs appropriately and found nothing amiss, verified how much blood was in the cell, and placed him on observation. The next morning, he was again examined by a nurse who checked his vitals, which were normal. When he later developed chest pain, he was sent to the emergency room. By Brown's own account, the nurses used their medical judgment and thus did not act with deliberate indifference. See *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (holding plaintiff pleaded himself out of court when complaint showed he has no claim for deliberate indifference). At most (and even this is a stretch), Brown alleged facts that show negligence, which is not enough to support an Eighth Amendment claim. See *Estelle*, 429 U.S. at 106; *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007).

We AFFIRM the judgment of the district court.

## APPENDIX: Limited Consent to Magistrate Judge Jurisdiction (March 14, 2018)

### MEMORANDUM OF UNDERSTANDING

1. This Memorandum of Understanding (MoU) is between the United States District Court for the Eastern District of Wisconsin and the Wisconsin Department of Justice.

2. This MoU pertains to civil cases involving exclusively a defendant Wisconsin state employee or entity that is sued by a private plaintiff who is either (1) incarcerated and asserting a cause of action under 42 U.S.C. § 1983 that must be initially screened by the District Court under 28 U.S.C. § 1915A; or (2) is not incarcerated but requests in forma pauperis status, a request that must be initially screened by the District Court under 28 U.S.C. §§ 1915(a) & 1915(e)(2)(B).

3. In cases described in paragraph 2, the Department of Justice hereby enters a limited consent to the exercise of jurisdiction by United States Magistrate Judges to: (1) conduct the initial screen described in 28 U.S.C. § 1915A and 28 U.S.C. §§ 1915(a) & 1915(e)(2)(B), *see* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73; (2) determine in the initial screen a motion for injunctive relief, *see* 28 U.S.C. § 636(b)(1)(A); (3) determine in the initial screen a request for maintenance of a class action, *see id.*; and (4) involuntarily dismiss an action before the initial screen, *see id.*

4. If any part of the case survives initial screening, then the appropriate entity within the Department of Justice will be served with the complaint and will be provided the opportunity either to consent to the continued exercise of jurisdiction by the Magistrate Judge who conducted the initial screen or to refuse consent, in which instance the case will be randomly reassigned to a United States District Judge for final adjudication.

5. Both the Department of Justice and the District Court understand that, under Fed. R. Civ. P. 73(b)(2), the Department and its Assistant Attorneys General may refuse consent without adverse substantive consequences.

6. This MoU may be terminated by either party on 60 days' written notice.

*Stephen C. Dries* 8/18/17                *Corey F. Finkelmeyer* 3.14.18

Stephen C. Dries            Date          Corey F. Finkelmeyer         Date
Clerk of Court                            Assistant Attorney General

U.S. District Court for the Eastern District of Wisconsin, Local Rules and Orders, Standing Order (number 15 in list), https://www.wied.uscourts.gov/local-rules-and-orders.