NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted February 5, 2021[*]
Decided February 10, 2021

**Before**

DIANE P. WOOD, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3087

| | |
|---|---|
| IVAN BOYD,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 20-C-1464 |
| DEBRA J. BELLIN, et al.,<br>    *Defendants-Appellees*. | William C. Griesbach,<br>*Judge*. |

**O R D E R**

Ivan Boyd's arm became sore and swollen after a flu shot, and in the days that followed, he twice fell while trying to climb into his top bunk with his arm in a sling. He sued several correctional officers and prison medical providers under 42 U.S.C. § 1983 for acting with deliberate indifference to his risk of injury, in violation of the

---

[*] We have agreed to decide the case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C). The case was dismissed at screening before any defendant was served with process, so no appellees are participating in the appeal.

Eighth Amendment. The district court dismissed his pro se complaint at screening, and because Boyd's allegations do not support a claim that any defendant failed to issue a low-bunk permit out of deliberate indifference to his safety, we affirm.

Boyd received a seasonal flu vaccination at Wisconsin's Redgranite Correctional Institution, where he is incarcerated, on December 12, 2019. About an hour later, at 3:00 p.m., he told a correctional officer that he felt pain and burning at the injection site and "shooting surges of pain down the elbow." The officer called the health services unit and reported back that a nurse said Boyd should place a cold towel on his arm. At about 4:00 p.m., Boyd used the emergency call button in his cell to report "extreme pain." The officer who came to assist him reported back at about 5:00 p.m. that the staff at the health services unit would call for him when they were ready; they did so within "a short time later." A nurse examined him, told him that stiffness, discomfort, and pain were normal, and gave him a bottle of nonprescription pain reliever. The next morning, Boyd again summoned a correctional officer with his call button and reported that neither a cold compress nor the pain medicine was working. This officer advised him that some pain was normal. That night Boyd submitted a health services request about his pain, and a nurse wrote back that soreness for up to a week was "within normal limits."

Overnight, Boyd again summoned emergency help. He reported that his pain was a ten on a one-to-ten scale but said that he could wait until morning to see a healthcare provider "if he absolutely had to." He spent the rest of the night unable to sleep because of pain. At 1:30 p.m. the next day—not first thing in the morning—Boyd was taken to the health services unit, where he saw two nurses. He told them that he had slept in his chair because he "nearly fell attempting to get into the top bunk," but neither nurse took steps to get him a low-bunk permit. Instead, a nurse advised him to use a warm compress and provided him with directions (to place a moist hot washcloth in a bag) but no supplies. Between December 16 and 18, Boyd saw another nurse and reported that his arm was getting worse. He also received more pain medicine and a sling for his arm, but again, no low-bunk accommodation.

On the night of December 19, Boyd fell while climbing up to his bunk and was taken to the emergency room. The health services unit called him in for a follow-up visit when he returned in the morning. On December 21, Boyd sent a health services request stating that he was in "constant pain" from his fall; the next day, he sent another one, about "the situation concerning his arm/flu-shot." On the night of December 26, he fell again while climbing up to his bunk; this time, he hurt his knee, and he reported pain,

swelling, and limping to the health-services unit. When he was examined the next day, two nurses "attacked" him for lying because they saw no swelling and said that he seemed to be "less than honest." When Boyd got angry, he was forced to leave. But that day, Boyd's "regular provider" authorized a low-bunk permit for him.

Boyd sued the medical providers and correctional officers who he believed had not responded appropriately to the complications from his flu shot and the risk of falling from his bunk. The correctional staff did not ensure timely medical treatment, he alleged, and the medical staff consistently failed to provide him with a low-bunk permit, leading to his injuries from two falls. At screening, the district court dismissed the complaint for failure to state a claim, see 28 U.S.C. § 1915A(b), concluding that Boyd did not show that he was "subject to an intolerable risk of harm as a result of the flu shot, let alone that Defendants knew of such a risk and unreasonably disregarded it." The court entered judgment the same day and later denied Boyd's motion for reconsideration, which was premised on evidence that the prison had recognized during the grievance process that he should have been given a low-bunk permit sooner.

On appeal, Boyd narrows his arguments and wishes to pursue relief only against the nurse who knew that he had to sleep in his chair one night and later accused him of lying, the nurse who issued him a sling, and the nurse and doctor who examined him when he returned from the hospital after his first fall. Although he told each of these defendants that his arm and shoulder were extremely painful, none took steps to mitigate the risk that he would fall from his bunk. Their inaction, he continues, created "an intolerable risk of harm" that later materialized. Boyd further contends that the district court misunderstood his claim; his grievance is not with the flu shot but the defendants' "response to the problems that ensued."

We accept Boyd's framing but even so cannot conclude that he stated a claim for relief under the Eighth Amendment. To do so, he had to allege that the defendants were deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The failure to protect a prisoner from "sufficiently imminent dangers" can violate the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 34 (1993). Even if we assume that the risk of falling from a ladder because of a sore arm was substantial, however, Boyd's allegations are not consistent with deliberate indifference to that risk.

The essence of Boyd's argument is that the Constitution required the defendants to order a low-bunk restriction, no matter what they did for his arm. In some cases, the failure to authorize a low bunk can amount to deliberate indifference, such as when the

need is obvious yet ignored, see *Palmer v. Franz*, 928 F.3d 560, 564 (7th Cir. 2019), or when there is evidence of a punitive intent, see *Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013) (nurse told inmate with back pain and no ladder to the top bunk to "figure it out"). But these situations differ from what Boyd alleged. Boyd relies on *Palmer*, but the "obvious" risk in that case was "a physical deformity that was obvious to a lay person," and the prisoner had a low-bunk permit in every prior institution. 928 F.3d at 562, 564. By contrast, Boyd alleged pain (albeit "extreme") and reduced mobility in one arm that his medical providers expected to be temporary. It does not strike us as obvious that someone in his condition could not be expected to safely climb a short ladder to the top bunk; in any case, the risk of harm was not "so great" that it was "almost certain to materialize." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). And by frequently examining Boyd's arm and providing him with a sling and medication—treatment he does not claim was inadequate—and instructing him how to use compresses for pain relief, his healthcare team addressed the condition that Boyd complained of. Although Boyd faults one nurse for not giving him the right supplies for a warm compress, he does not allege he was unable to obtain them at all, and the overall care he received cannot be characterized as "inaction" or indifference.

As he did in his motion to reconsider, Boyd emphasizes that the prison's health-services manager opined, when interviewed during the grievance process, that he should have been given a low-bunk permit when he was issued a sling. This opinion, however, does not suggest that the nurse who gave him a sling acted in a "blatantly inappropriate" way. *Harper v. Santos*, 847 F.3d 923, 928 (7th Cir. 2017). And, to the extent the statement implies that not issuing a low-bunk permit along with the sling violated a prison rule or policy, that in itself does not imply deliberate indifference under the Eighth Amendment. See *Lee v. Young*, 533 F.3d 505, 510–11 (7th Cir. 2008).

At most, Boyd might have a claim for negligence, which is not a basis for liability under § 1983. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020). Though the district court did not address the common-law negligence claims in the complaint, we infer that it intended to follow the norm of relinquishing supplemental jurisdiction when it concluded that Boyd had no federal claim. See 28 U.S.C. § 1367(c)(3); *Lavite v. Dunstan*, 932 F.3d 1020, 1034 (7th Cir. 2019). Without commenting on their merit, we therefore clarify that the dismissal of the negligence claims is without prejudice to bringing them in state court.

Finally, we note that, without explanation, the district court did not give Boyd an opportunity to amend his complaint, instead entering final judgment on the day of the

dismissal. We discourage this practice. See *Childress v. Walker*, 787 F.3d 433, 442 (7th Cir. 2015); *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). Civil plaintiffs should be given at least one opportunity to amend their pleadings, and the screening requirement in § 1915A(a) "does not—either explicitly or implicitly—justify deviation from the usual procedural practice." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). In his Rule 59(e) motion, however, Boyd did not ask for a chance to amend his complaint; he insisted that his original complaint was sufficient. He repeats that argument on appeal. Moreover, under our de novo review, we conclude that amendment would be futile. See *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 347 (7th Cir. 2018). Boyd will not be able to state an Eighth Amendment claim based on the failure to provide him with a low-bunk permit for the temporary pain and stiffness in his arm.

AFFIRMED